JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Lauren Schock Battuello
1441 Manorwood Drive,
West Chester, Pennsylvania, 19380

(b) County of Residence of First Listed Plaintiff: Chester Co., PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Lee B. Balefsky, Esquire
Kline & Specter, PC
1525 Locust Street, Philadelphia, PA 19102, 215-772-1000

## DEFENDANTS
USPLabs, LLC and Bodybuilding.com, LLC

County of Residence of First Listed Defendant: Dallas Co., TX
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☒ 365 Personal Injury - Product Liability | | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 690 Other | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1332
Brief description of cause:
Product liability action involving parties who are citizens of different states

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE
DOCKET NUMBER

DATE: 7/15/13
SIGNATURE OF ATTORNEY OF RECORD: /s/ Lee B. Balefsky

**FOR OFFICE USE ONLY**
RECEIPT #      AMOUNT      APPLYING IFP      JUDGE      MAG. JUDGE

JS 44 Reverse (Rev. 12/12)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V. **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LAUREN SCHOCK BATTUELLO,**<br>Individually, and as Administrator of **The ESTATE** of **TODD S. BATTUELLO, DECEASED**<br>1441Manorwood Drive,<br>West Chester, PA, 19380<br><br>       Plaintiff<br>v.<br><br>**USPLABS, LLC**<br>10761 King William Drive<br>Dallas, TX, 75220<br>  and<br>**BODYBUILDING.COM, LLC**<br>2026 S. Silverstone Way<br>Meridian, ID, 83642<br><br>       Defendants. | NO.:<br><br>**COMPLAINT IN CIVIL ACTION** |

## CIVIL ACTION COMPLAINT

1. Federal jurisdiction is asserted pursuant to 28 U.S.C. § 1332(a). Venue in the Eastern District of Pennsylvania is proper pursuant to 28 U.S.C. § 1391(b).

2. Todd S. Battuello was born on August 21, 1977, and died on May 15, 2012. He was a resident and citizen of the Commonwealth of Pennsylvania at all times relevant to this action. He was thirty-four years old when he died.

3. Plaintiff, Lauren Schock Battuello, as the Administrator of the Estate of Todd S. Battuello, and in her own right, is an adult residing at 1441 Manorwood Drive, West Chester, Pennsylvania, 19380.

1

4. Defendant, USPlabs, LLC, is a legal entity, duly organized and existing under the laws of the State of Texas, with a principal place of business located at 10761 King William Drive, Dallas, Texas, 75220.

5. Defendant, Bodybuilding.com, LLC, is a legal entity, duly organized and existing under the laws of the State of Idaho, with a principal place of business located at 2026 South Silverstone Way, Meridian, Idaho, 83642.

6. At all relevant times, USPlabs, LLC acted and/or failed to act through its agents, workers, servants, contractors, attorneys and employees, each and all of whom were acting within the scope of authority.

7. At all relevant times, Bodybuilding.com, LLC acted and/or failed to act through its agents, workers, servants, contractors, attorneys and employees, each and all of whom were acting within the scope of authority.

8. In the spring of 2012, Mr. Battuello, purchased OxyELITE Pro, an over-the-counter dietary supplement, which was designed, manufactured, and supplied by Defendant, USPlabs, LLC.

9. At all relevant times hereto, OxyELITE Pro was advertised as a "Pharmacist Formulated," "Super Thermogenic™," "University Studied" weight-loss and body-building supplement.

10. Mr. Battuello purchased OxyELITE Pro from Bodybuilding.com, LLC, which is in the business of selling dietary supplements, including OxyELITE Pro and other nutritional supplements, and body building-related products through its online store, www.Bodybuilding.com.

11. At all relevant times, OxyELITE Pro contained 1, 3-dimethylamylamine HCL (also known as "DMAA"), a psychoactive stimulant that is structurally related to amphetamine. DMAA is used for its euphoric or performance enhancing effects. At all relevant times, OxyELITE Pro also contained caffeine as an active stimulant.

12. The bottle containing the OxyELITE Pro was imprinted with the following directions:

> Directions for use: As a dietary supplement, begin by taking 1 capsule on an empty stomach 15-30 minutes before breakfast for the first three (3) days. An additional 1 capsule may be taken 5-6 hours later starting on day 4. Once the above steps have been taken, an additional capsule may be added to the morning dose. Under no circumstances should the initial dose be exceeded or the warnings on this bottle be ignored.
>
> DO NOT USE PRODUCT FOR LONGER THAN 8 WEEKS FOLLOWED BY A SUBSEQUENT 4 WEEK BREAK. DO NOT EXCEED 3 CAPSULES IN ANY 24 HOUR PERIOD. Exceeding the recommended amounts or not following directions may lead to unwanted effects. Consume at least 125 Fl. Oz. of liquid per day for men and 91 Fl. Oz. of liquid per day for women while taking this product. Store in cool dry place. Discard after expiration date.

13. The bottle containing the OxyELITE Pro was imprinted with the following warnings:

> Warning: This product is only intended to be consumed by healthy adults 18 years of age or older. Pregnant or nursing women should not use this product. Consult with your health care provider before using this product, especially if you are taking any prescription, over the counter medication, dietary supplement product or if you have any pre-existing medical condition including but not limited to: high or low blood pressure, cardiac arrhythmia, stroke, heart, liver, kidney or thyroid disease, seizure disorder, psychiatric disease, diabetes, difficulty urinating due to prostate enlargement or if you are taking a MAO-B inhibitor or any other medication, including but not limited to MAOIs, SSRIs or any other compounds with serotonergic activity. This product contains caffeine and should not be taken by individuals wishing to eliminate this ingredient from their diet. Discontinue use 2 weeks prior to surgery. Do not use in combination with caffeine or any stimulants from other sources whatsoever, including but not limited to, coffee, tea, soda and other dietary supplements or medications. Do not combine with alcohol. Discontinue use and immediately consult your health care professional if you experience any adverse reaction to this product. Do not exceed recommended serving. Do not use if safety seal is broken or missing. KEEP OUT OF REACH OF CHILDREN.

14. In the spring of 2012, Mr. Battuello used OxyELITE Pro in accordance with its directions for use.

15. At all relevant times hereto, Mr. Battuello used OxyELITE Pro for its intended and foreseeable use as a dietary supplement

16. In the evening of May 15, 2012 while at his home in West Chester, Pennsylvania, Mr. Battuello went into ventricular fibrillation, became unresponsive, and started convulsing. When emergency responders arrived, Mr. Battuello was in cardiac arrest. He was transported to Chester County Hospital in West Chester, Pennsylvania where he was declared dead.

17. Following an autopsy, the immediate and only cause of death was identified as "cardiac dysrhythmia of undetermined etiology."

18. A toxicology study following Mr. Battuello's death revealed the presence of DMAA.

19. As a direct and proximate cause of using OxyELITE Pro, Mr. Battuello suffered the following:

    (a) Ventricular fibrillation;

    (b) Cardiac arrest;

    (c) Convulsions;

    (d) Pain and suffering; and

    (e) Death.

20. The defective warnings, instructions, design and/or manufacturing of the OxyELITE Pro, as well as Defendants' conduct as set forth below, were direct and/or proximate causes of Mr. Battuello's injuries and death.

21. The defective warnings, instructions, design and/or manufacturing of the OxyELITE Pro, as well as Defendants' conduct as set forth below, were direct and/or proximate causes of Plaintiff Lauren Schock Battuello's injuries and damages, including, but not limited to, loss of consortium, loss of companionship, and/or loss of services.

22. The OxyELITE Pro was defective due to its warnings, instructions, design and/or manufacturing, and, therefore, Defendants are liable to Lauren Schock Battuello, as the Administrator of the Estate of Todd S. Battuello, and in her own right, under the doctrine of strict liability, under Restatement of Torts 2d 402A, as adopted into Pennsylvania law.

23. Mr. Battuello's death and Lauren Schock Battuello's damages were caused by the acts and/or omissions of Defendants, the recklessness, negligence and/or fault of Defendants, the defective warnings of the OxyELITE Pro, the defective instructions of the OxyELITE Pro, the defective design and manufacture of the OxyELITE, and/or the breaches of warranties by Defendants, and were in no way caused by any acts or omissions of Mr. Battuello.

24. Plaintiff claims all damages cognizable and recoverable under the Pennsylvania Wrongful Death and Survival Acts.

### FIRST CAUSE OF ACTION
### COUNT I – STRICT LIABILITY

**Plaintiff, Lauren Schock Battuello,
as the Administrator of the Estate of Todd S. Battuello
v.
Defendants USPlabs, LLC & Bodybuilding.com, LLC**

25. Plaintiff hereby incorporates paragraphs 1 through 24 as though fully set forth herein at length.

26. At all relevant times hereto, Defendants were engaged in the design, manufacture,

and/or sale of OxyELITE Pro.

27. OxyELITE Pro, and its warnings and instructions, were defective and unreasonably dangerous to the user or consumer, and as such, Defendants are legally responsible for Mr. Battuello's injuries and damages under the provisions of Restatement of Torts 2d 402A, as adopted into Pennsylvania law.

28. The OxyELITE Pro, and its warnings, instructions and packaging, were expected to, and did reach, the consuming public without substantial change in the condition in which the OxyELITE Pro was sold.

29. The defective condition of the OxyELITE Pro, includes, but is not limited to, defects as follows:

    a) improper inclusion of DMAA as an ingredient;

    b) improper inclusion of high levels of DMAA;

    c) improper combination of DMAA and caffeine as stimulants;

    d) improper instructions and/or directions regarding the dosage of OxyELITE Pro;

    e) improper instructions and/or directions regarding the use of OxyELITE Pro;

    f) failure to warn of the risks of using OxyELITE Pro;

    g) failure to warn of the potential for injury and death arising from use of OxyELITE Pro;

    h) design and/or manufacture of OxyELITE Pro which permitted injury and death to arise from use of the supplement;

    i) design and/or manufacture of OxyELITE Pro by using improper

ingredients;

j) design and/or manufacture of OxyELITE Pro by using incompatible ingredients;

k) failure to recall the OxyELITE Pro upon learning that its design features, warnings and/or instructions rendered OxyELITE Pro unsafe to users;

l) failure to take reasonable and necessary steps to design, test and/or manufacture OxyELITE Pro;

m) selection and/or use of ingredients and/or other components not fit for their intended use;

n) failure to adequately and properly test OxyELITE Pro and/or all of its ingredients;

o) other defects as may be learned through discovery.

30. As a result of the acts and omissions of Defendants as set forth above, Mr. Battuello suffered the aforementioned damages and injuries.

WHEREFORE, Plaintiff, Lauren Schock Battuello, as the Administrator of the Estate of Todd S. Battuello, demands judgment against Defendants, individually and/or jointly and severally, for compensatory and punitive damages in excess of $75,000.00, together with interest and costs.

### COUNT II - NEGLIGENCE

**Plaintiff, Lauren Schock Battuello,
as the Administrator of the Estate of Todd S. Battuello
v.
Defendants USPlabs, LLC & Bodybuilding.com, LLC**

31. Plaintiff hereby incorporates paragraphs 1 through 30 as though fully set forth herein at length.

32. The negligence and recklessness of Defendants, their servants, agents and/or employees, consisted of the following:

    a) improper inclusion of DMAA as an ingredient;

    b) improper inclusion of high levels of DMAA;

    c) improper combination of DMAA and caffeine as stimulants;

    d) improper instructions and/or directions regarding the dosage of OxyELITE Pro;

    e) improper instructions and/or directions regarding the use of OxyELITE Pro;

    f) failure to warn of the risks of using OxyELITE Pro;

    g) failure to warn of the potential for injury and death arising from use of OxyELITE Pro;

    h) negligent design and/or manufacture of the OxyELITE Pro which permitted injury or death to arise from its use;

    i) negligent design and/or manufacture of the OxyELITE Pro by using improper ingredients;

    j) negligent design and/or manufacture of the OxyELITE Pro by using incompatible ingredients;

    k) negligent failure to recall the OxyELITE Pro upon learning that its design features, warnings and/or instructions rendered OxyELITE Pro unsafe to users;

    l) negligent failure to take reasonable and necessary steps to design, test and/or manufacture the OxyELITE Pro;

  m)  negligent selection and/or use of ingredients and/or other components not fit for their intended use;

  n)  negligent failure to adequately and/or properly test the OxyELITE Pro, and/or all of its ingredients;

  o)  other acts of negligence and/or recklessness as may be learned through discovery.

33. As a result of the negligent acts and/or omissions of Defendants as set forth above, Mr. Battuello suffered the aforementioned injuries and death.

34. In light of the complete lack of any warning of potential injury to users, especially warnings of possible serious injury or death, in combination with Defendants' knowledge that the FDA considered OxyELITE Pro to contain mislabeled ingredients, Defendants' conduct constitutes a reckless disregard for the safety of users of the OxyELITE Pro, such as Mr. Battuello.

WHEREFORE, Plaintiff, Lauren Schock Batuello, as the Administrator of the Estate of Todd S. Battuello, demands judgment against Defendants, individually and/or jointly and severally, for compensatory and punitive damages in excess of $75,000.00, together with interest and costs.

### COUNT III - BREACH OF EXPRESS WARRANTY

**Plaintiff, Lauren Schock Battuello,
as the Administrator of the Estate of Todd S. Battuello
v.
Defendants USPlabs, LLC & Bodybuilding.com, LLC**

35. Plaintiff hereby incorporates paragraphs 1 through 34 as though fully set forth herein at length.

36. Defendants, in designing, manufacturing, fabricating, inspecting, marketing,

9

distributing, selling and/or supplying OxyELITE Pro, expressly warranted that the supplement would conform to the description contained in their advertisements, written warranties, manuals and other materials, which includes, but is not limited to, packaging that provides as follows:

> \*Pharmacist Formulated
> \*Super Thermogenic™
> \*University Studied
> \*OxyElite Pro is Pharmacist-formulated & must be used with extreme caution, only by healthy adults capable of handling its true power. It is mandatory that users get clearance from their physician before use.
> \*\*These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent disease.
>
> **Directions**
>
> As a dietary supplement, begin by taking 1 capsule on an empty stomach 15-30 minutes before breakfast for the first three (3) days. An additional 1 capsule may be taken 5-6 hours later starting on day 4. Once the above steps have been taken, an additional capsule may be added to the morning dose. Under no circumstances should the initial dose be exceeded or the warnings on this bottle ignored. DO NOT USE PRODUCT FOR LONGER THAN 8 WEEKS FOLLOWED BY A SUBSEQUENT 4 WEEK BREAK. DO NOT EXCEED 3 CAPSULES IN ANY 24 HOUR PERIOD. Exceeding the recommended amounts or not following directions may lead to unwanted effects. Consume at least 125 Fl. Oz. of liquid per day for men and 91 Fl. Oz. of liquid per day for women while taking this product. Store in cool dry place. Discard after expiration date.

37.    The advertisements, written warranties and/or other written information by Defendants created an affirmation and/or promise that OxyELITE Pro would conform, and create an express warranty to that effect; the affirmation of fact or promise and description of the goods became the basis of a bargain, thereby creating express warranties.

38.    Defendants breached those express warranties.

39.    Defendants are liable to Plaintiff for the injuries and damages described herein for breach of express warranty pursuant to 13 Pa.C.S.A. Sec. 2313 of the law of the Commonwealth of Pennsylvania.

40. As a result of the acts and omissions of Defendants, Mr. Battuello suffered the aforementioned injuries and damages.

41. In light of the complete lack of any warning of potential serious injury to users, especially warnings of cardiac arrest and death, in combination with Defendants' representation that the OxyELITE is "Pharmacist Formulated" and "University Studied," Defendants' conduct constitutes a reckless disregard for the safety of users of OxyELITE Pro, such as Mr. Battuello.

WHEREFORE, Plaintiff, Lauren Schock Battuello, as Administrator of the Estate of Todd S. Battuello, demands judgment against Defendants, individually and/or jointly and severally, for compensatory and punitive damages in excess of $75,000.00, together with interest and costs.

### COUNT IV - BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

**Plaintiff, Lauren Schock Battuello,
as the Administrator of the Estate of Todd S. Battuello
v.
Defendants USPlabs, LLC & Bodybuilding.com, LLC**

42. Plaintiff hereby incorporates paragraphs 1 through 41 as though fully set forth herein at length.

43. Defendants were the designers, manufacturers, distributors, suppliers and/or sellers of OxyELITE Pro, and were regular manufacturers, distributors, suppliers and/or sellers of OxyELITE Pro.

44. At the time of the design, manufacture and/or distribution of OxyELITE Pro, Defendants had reason to know the specific use and particular purpose for which OxyELITE Pro was being purchased and used, namely, for use as a weight-loss and body-building dietary supplement. Mr. Battuello relied upon the skills and/or judgment of Defendants to select and/or

furnish a product suitable for that use, thereby creating an implied warranty that OxyELITE Pro was fit for that particular purpose.

45. By designing, manufacturing, and/or supplying OxyELITE Pro, Defendants impliedly warranted that OxyELITE Pro was safe for use by the consumer.

46. OxyELITE Pro, as stated above, was unsafe for use for the particular purpose for which it was intended.

47. Defendants are liable to Plaintiff, Lauren Schock Battuello, as the Administrator of the Estate of Todd S. Battuello, for injuries and damages described herein for breach of implied warranty of fitness pursuant to 13 Pa.C.S.A. Sec. 2315 of the law of the Commonwealth of Pennsylvania.

48. As a result of the acts and omissions of Defendants, Mr. Battuello suffered the aforementioned injuries and damages.

49. In light of the complete lack of any warning of potential serious injury to users, especially warnings of cardiac arrest and death, in combination with Defendants' representation that the OxyELITE is "Pharmacist Formulated" and "University Studied," Defendants' conduct constitutes a reckless disregard for the safety of users of OxyELITE Pro, such as Mr. Battuello.

WHEREFORE, Plaintiff, Lauren Schock Battuello, as Administrator of the Estate of Todd S. Battuello, demands judgment against Defendants, individually and/or jointly and severally, for compensatory and punitive damages in excess of $75,000.00, together with interest and costs.

## COUNT V - BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

**Plaintiff, Lauren Schock Battuello,
as the Administrator of the Estate of Todd S. Battuello
v.
Defendants USPlabs, LLC & Bodybuilding.com, LLC**

50.     Plaintiff hereby incorporates paragraphs 1 through 49 as though fully set forth herein at length.

51.     Defendants were the designers, manufacturers, distributors, suppliers and/or sellers of OxyELITE Pro, and were regular manufacturers, distributors, suppliers and/or sellers of OxyELITE Pro.

52.     Defendants were merchants with respect to the sale of OxyELITE Pro, and as such, dealt in goods of the kind involved in the transaction.

53.     Defendants held themselves out as having knowledge and skill peculiar to goods involved in the transaction, and employed others, who by their occupation, held themselves out as having such knowledge or skill.

54.     An implied warranty of merchantability was established in the sale of OxyELITE Pro. The implied warranty of merchantability was breached, inter alia, as follows:

        a)     OxyELITE Pro was not fit for the ordinary purpose for such goods are used; and

        b)     OxyELITE Pro did not conform to the promises or affirmation of fact made to the consumer.

55.     Defendants are liable to Plaintiff, Lauren Schock Battuello, as the Administrator of the Estate of Todd S. Battuello, for injuries and damages described above for breach of implied warranty of merchantability pursuant to 13 Pa.C.S.A. Sec. 2314 of the law of the Commonwealth of Pennsylvania.

56. As a result of the acts and omissions of Defendants, Mr. Battuello suffered the aforementioned injuries and damages.

57. In light of the complete lack of any warning of potential serious injury to users, especially warnings of cardiac arrest and death, in combination with Defendants' representation that the OxyELITE is "Pharmacist Formulated" and "University Studied," Defendants' conduct constitutes a reckless disregard for the safety of users of OxyELITE Pro, such as Mr. Battuello.

WHEREFORE, Plaintiff, Lauren Schock Battuello, as Administrator of the Estate of Todd S. Battuello, demands judgment against Defendants, individually and/or jointly and severally, for compensatory and punitive damages in excess of $75,000.00, together with interest and costs.

## SECOND CAUSE OF ACTION
## LOSS OF CONSORTIUM

### Plaintiff, Lauren Schock Battuello
### v.
### Defendants USPlabs, LLC & Bodybuilding.com, LLC

58. Plaintiff hereby incorporates paragraphs 1 through 57 as though fully set forth herein at length.

59. At the time of his death, Mr. Battuello and Plaintiff, Lauren Schock Battuello, were married.

60. As a result of Mr. Battuello's death caused by the defective warnings, instructions, design and/or manufacturing of the OxyElite, as well as Defendants' conduct as set forth above, Plaintiff Lauren Schock Battuello has suffered a loss of consortium and has been deprived of the services and companionship of her husband.

WHEREFORE, Plaintiff, Lauren Schock Battuello, demands judgment against Defendants, individually and/or jointly and severally, for compensatory damages in excess of $75,000.00, together with interest and costs.

                                       Respectfully submitted,

                                       **KLINE & SPECTER, P.C.**

By: _____
                                       THOMAS R. KLINE, ESQUIRE
                                       LEE B. BALEFSKY, ESQUIRE
                                       MICHELLE L. TIGER, ESQUIRE
                                       CHRISTINE V. CLARKE, ESQUIRE
                                       Attorneys for Plaintiffs

Dated: 7-15-13